IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| STATE OF IOWA, | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY, and | ) | |
| STATE OF MISSISSIPPI | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.  11-4038 |
| | ) | |
| TERRA INDUSTRIES INC., | ) | |
| PORT NEAL CORPORATION, | ) | |
| TERRA INTERNATIONAL (OKLAHOMA) INC., | ) | |
| TERRA NITROGEN, LIMITED PARTNERSHIP | ) | |
| and TERRA MISSISSIPPI NITROGEN, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("U.S. EPA"); the State of  Iowa ("Iowa"); the

State of Mississippi by and through the Mississippi Department of Environmental Quality

("MDEQ") and the Mississippi Commission on Environmental Quality ("MCEQ"); and the

Oklahoma Department of Environmental Quality ("Oklahoma DEQ"), allege:

## NATURE OF THE ACTION

1.      This is a civil action brought against Terra Industries Inc. ("Terra Industries"),

Terra International (Oklahoma) Inc. ("Terra Oklahoma"), Terra Nitrogen, Limited Partnership

("Terra Nitrogen"), Port Neal Corporation ("Port Neal"), and Terra Mississippi Nitrogen, Inc.

("Terra Mississippi"), (collectively "Defendants" or "Terra"), pursuant to Sections 113(b) and

304(a) of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(b) and 7604(a), Iowa Code §§

455B.112 and 455B.146, 27A Okla.Stat. § 2-5-105 and the Mississippi Air and Water Pollution

Control Law, Miss. Code Ann. Section 49-17 et seq.  This Complaint seeks injunctive relief and

the assessment of civil penalties for violations of the Prevention of Significant Deterioration

("PSD") provisions of the CAA, 42 U.S.C. §§ 7470-92; the New Source Performance Standards

("NSPS") of the CAA, 42 U.S.C. § 7411; Title V of the CAA, 42 U.S.C. § 7661 *et seq.* and the

State Implementation Plans for the States of Iowa, Mississippi, and Oklahoma promulgated

pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, or other state authorities, to the extent

they incorporate and/or implement the above-listed federal requirements.  See Iowa Code

Sections 455B.131 *et seq*. and 567 Iowa Administrative Code 22.4, 22.100-116, 23.1(2) and 33;

Oklahoma Air Pollution Control Regulations 1.4.1, 1.4.3; the Mississippi Air and Water

Pollution Control Law, Miss. Code Ann. Section 49-17 *et seq*. as implemented by Mississippi

Commission on Environmental Quality ("MCEQ") Regulations APC-S-1, APC-S-2, APC-S-4,

APC-S-5 and APC-S-6.

2.      This action is based upon violations that occurred and continue to occur at nine

nitric acid manufacturing facilities owned and operated by Defendants located in or near the

following cities: Sergeant Bluff, Iowa, Verdigris, Oklahoma, Woodward, Oklahoma, and Yazoo

City, Mississippi,(hereinafter collectively "Defendants' Nitric Acid Plants").  The plants emit nitrogen oxides ("NOx") into the atmosphere, which is a regulated pollutant under the CAA.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(a), and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

4.    Venue is proper in this District pursuant to Sections 113(b) and 304(c) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(c), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because some of the violations that constitute the basis of this Complaint occurred and are occurring in this District and two of the Defendants' Acid Plants are located in this District.  Each of the Defendants has consented to venue in this District.

## NOTICES

5.    Pursuant to Sections 113(a)(1) and 113(b) of the CAA, 42 U.S.C. § 7413(a), (b), U.S. EPA. has given notice of the violations and of this action to the Defendants and the Co-plaintiff States of Iowa, Mississippi and Oklahoma more than thirty days prior to the filing of this Complaint.

6.    Pursuant to Section 304(b) of the CAA, 42 U.S.C. § 7604(b), Co-Plaintiffs, the State of Iowa, the State of Mississippi, and Oklahoma DEQ have given notice of this action to Terra more than sixty days prior to the filing of this Complaint.

## DEFENDANTS

7.    Defendant Terra Industries Inc. is incorporated under the laws of the State of Maryland and directly or indirectly owns a majority interest in Port Neal, Terra Oklahoma and Terra Mississippi and Terra Nitrogen.

Complaint:  United States et. al. v. Terra Industries et. al. – Page 3.

8.     Defendant Port Neal Corporation is incorporated in the State of Delaware.  It owns and operates two nitric acid manufacturing plants known as Port Neal #1 and Port Neal #2 located at 1182 260th Street,  Sergeant Bluff, Iowa 51054.  (Hereinafter "the Port Neal Facility").

9.     Defendant Terra Nitrogen is a limited partnership formed under the laws of Delaware.  It owns and operates two nitric acid manufacturing plants known as Verdigris #1 and Verdigris #2 located at 6606 East 540 Road, Claremore, OK 74019, Oklahoma.  (Hereinafter "the Verdigris Facility").

10.     Defendant Terra Oklahoma is incorporated in the State of Delaware.  It owns and operates one nitric acid manufacturing plant known as Woodward #1 located at 1000 Terra Drive, Woodward, OK 73801, Oklahoma.  (Hereinafter "the Woodward Facility")

11.     Defendant Terra Mississippi is incorporated in the State of Delaware.  It owns and operates four nitric acid manufacturing plants known as Yazoo City # 6, Yazoo City # 8, Yazoo City #9 and Yazoo City #10 located at 4612 Highway 49 East, Yazoo City, Mississippi 39194.  (Hereinafter "the Yazoo City Facility").

12.     Each Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY BACKGROUND

13.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

## I.     NATIONAL AMBIENT AIR QUALITY STANDARDS

14.     Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires the Administrator of U.S. EPA to promulgate a list of each air pollutant, emissions of which may reasonably be

anticipated to endanger public health or welfare and the presence of which results from numerous or diverse mobile or stationary sources.  Pursuant to Section 108(a), U.S. EPA has identified, *inter alia*, nitrogen oxides as such a pollutant.  40 C.F.R. § 50.11.

15.     Section 109 of the CAA, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants for which air quality criteria have been issued pursuant to Section 108 of the CAA, 42 U.S.C. § 7408.  The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.  Pursuant to Section 109 of the CAA, U.S. EPA has promulgated primary and secondary NAAQS for nitrogen oxides. 40 C.F.R. § 50.11.

16.     Under Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due to insufficient data is "unclassifiable."

A.     **State Implementation Plans**

17.     To achieve the objectives of the NAAQS and the CAA, Section 110 of the CAA, 42 U.S.C. § 7410, requires each State to adopt and submit to U.S. EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region within each state.  This plan is known as a State Implementation Plan ("SIP").

18.     Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, the States of Iowa,

Mississippi, and Oklahoma have adopted and submitted to U.S. EPA for approval various rules

for the attainment and maintenance of the NAAQS.  U.S.EPA has approved these state

provisions and they therefore constitute the state's "applicable implementation plan," within the

meaning of Section 113(b) and 302(q) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(q), and are

considered State Implementation Plans ("SIP").  <u>See</u> 52 C.F.R. §§ 820-828 (Iowa SIP); §§ 1920-

1960 (Oklahoma SIP); §§ 1270-1281 (Mississippi SIP).

### B.     <u>Prevention of Significant Deterioration ("PSD") Requirements</u>

#### 1.     <u>PSD Program in General</u>

19.     Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for

the prevention of significant deterioration of air quality in those areas designated as either

attainment or unclassifiable for purposes of meeting the NAAQS.  These requirements are

designed to protect public health and welfare, to assure that economic growth will occur in a

manner consistent with the preservation of existing clean air resources, and to assure that any

decision to permit increased air pollution is made only after careful evaluation of all the

consequences of such a decision and after public participation in the decision making process.

These provisions are referred to herein as the "PSD program."

20.     The core of the PSD program is that "[n]o major emitting facility . . . may

be constructed in any area" unless various requirements are met.  Section 165(a) of the CAA,

42 U.S.C. § 7475(a).  These requirements include obtaining a permit with emission limits,

demonstrating that emissions will not contribute to a NAAQS violation, and applying "best

available control technology" ("BACT") to control emissions.  <u>Id.</u>

21.     Section 169(1) of the CAA, 42 U.S.C. § 7479(1), designates nitric acid plants which emit or have the potential to emit one hundred tons per year or more of any pollutant to be a "major emitting facility."

### 2.     PSD Regulations Applicable in Iowa, Mississippi, and Oklahoma

22.     U.S. EPA promulgated regulations designed to implement the PSD program. These regulations are found at 40 C.F.R. § 52.21 and are referred to as the "PSD regulations."

23.     Section 161 of the CAA, 42 U.S.C. § 7471, requires that each SIP contain a PSD program and the Iowa, Oklahoma and Mississippi SIPs all have PSD programs as part of their SIPs that are applicable to this action and closely mirror the federal PSD regulations codified at 40 C.F.R. § 52.21.   See 567 Iowa Administrative Code Chapters 22.4, 33; Oklahoma Air Pollution Control Regulation (OAPCR) 1.4.1 – 1.4.4; Mississippi Air and Water Pollution Control Law, Miss. Code Ann. Section 49-17 et seq. as implemented by MCEQ Regulations APC-S-1, APC-S-4, and APC-S-5.

### 3.     Requirements of the Applicable PSD Regulations

24.     Under the PSD regulations, and state SIPs, applicable to the allegations in this Complaint, "[n]o stationary source or modification to which the requirements of paragraphs (j) through (r) of this section apply shall begin actual construction without a permit which states that the stationary source or modification would meet those requirements."  40 C.F.R. § 52.21(a)(1). The requirements of paragraphs (j) through (r) "apply to any major stationary source and any major modification with respect to each pollutant subject to regulation under the Act that it would emit."  50 C.F.R. § 52.21(a)(2).

Complaint:  United States et. al. v. Terra Industries et. al. – Page 7.

25.     "Major modification" is defined as "any physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under the Act."  40 C.F.R. § 52.21(b)(2)(i).

26.     For nitrogen oxides, an emissions increase is "significant" if the net increase or potential to emit is equal to or greater than 40 tons per year.  40 C.F.R. § 52.21(b)(23)(i).

27.     "Net emissions increase" is defined as "[a]ny increase in actual emissions from a particular physical change or change in method of operation" and any other emissions increase or decrease at the source that is contemporaneous and creditable.  40 C.F.R. § 52.21(b)(3)(i).

28.     If a new major stationary source or major modification triggers the requirements of the PSD program, the source or modification must install and operate best available control technology ("BACT"), as that term is defined by 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), for each pollutant subject to regulation under the CAA that it would have the potential to emit in significant amounts.  40 C.F.R. § 52.21(j).

29.     If a new major stationary source or major modification triggers the requirements of the PSD program, the owner or operator must demonstrate that the construction or modification, taken together with other increases or decreases of air emissions, will not violate applicable air quality standards.  40 C.F.R. § 52.21(k).

30.     If a new major stationary source or major modification triggers the requirements of the PSD program, the application for a PSD permit must be accompanied by an analysis of ambient air quality in the area.  40 C.F.R. § 52.21(m).

31.     If a new major stationary source or major modification triggers the requirements of the PSD program, the owner or operator must submit all information necessary to perform any analysis or make any determination required under 40 C.F.R. § 52.21.  40 C.F.R. § 52.21(n).

32.     Any owner or operator of a new major stationary source or modification subject to 40 C.F.R. § 52.21 who constructs or operates a source not in accordance with a PSD permit application or commences construction without applying for and receiving approval thereunder is subject to an enforcement action.  42 U.S.C. § 7413(b); 40 C.F.R. § 52.21(r)(1).

## II.     NEW SOURCE PERFORMANCE STANDARDS

33.     Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires U.S. EPA to publish and periodically revise a list of categories of stationary sources including those categories that, in U.S. EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare.

34.     Once a category is included on the list, Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), requires U.S. EPA to promulgate a federal standard of performance for new sources within the category, also known as a New Source Performance Standard ("NSPS"). Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of a NSPS after the effective date of the NSPS applicable to such source.

35.     "New source" is defined as any stationary source, the construction or modification of which is commenced after the publication of the NSPS regulations or proposed NSPS regulations applicable to such sources.  42 U.S.C. § 7411(a)(2).  "Stationary source" is defined as a building, structure, facility, or installation which emits or may emit any air pollutant.  42 U.S.C. § 7411(a)(3).

36.     Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), U.S. EPA has identified nitric acid plants as one category of stationary sources that cause, or

contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

37.     Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), U.S. EPA has promulgated regulations that contain general provisions applicable to all NSPS sources. 40 C.F.R. Part 60, Subpart A, §§ 60.1- 60.19 ("Subpart A").  U.S. EPA also has promulgated specific New Source Performance Standards for nitric acid plants at 40 C.F.R. Part 60, Subpart G, §§ 60.70-60.74 ("Subpart G").

### A.      Subpart A

38.     The provisions of 40 C.F.R. Part 60 "apply to the owner or operator of any stationary source which contains an affected facility, the construction or modification of which is commenced after the publication [in Part 60] of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility."  40 C.F.R. § 60.1.

39.     "Affected facility" is defined as "any apparatus to which a standard is applicable."  40 C.F.R. § 60.2.

40.     "Modification" is defined as "any physical change in, or change in the method of operation of, an existing facility which increases the amount of any air pollutant (to which a standard applies) emitted into the atmosphere by that facility or which results in the emission of any air pollutant (to which a standard applies) into the atmosphere not previously emitted." 40 C.F.R. § 60.2.  The regulations further state that any physical or operational change to an existing facility which results in an increase in the emission rate to the atmosphere of any pollutant to which a standard applies shall be considered a modification within the meaning of Section 111 of the CAA, 42 U.S.C. § 7411.  40 C.F.R. § 60.14(a).

41.     An "existing facility" is defined as "any apparatus of the type for which a standard is promulgated in this part, and the construction or modification of which was commenced before the date of proposal of that standard."  40 C.F.R. § 60.2.

42.     Upon modification, an "existing facility" becomes an "affected facility" for which the applicable NSPS must be satisfied.  40 C.F.R. § 60.14.

**B.     Subpart G**

43.     The "affected facility" to which the NSPS for nitric acid plants applies is defined as a "nitric acid production unit" for which construction or modification is commenced after August 17, 1971.  40 C.F.R. § 60.70.  A "nitric acid production unit" is defined as "any facility producing weak nitric acid by either the pressure or atmospheric pressure process."  The regulations define "weak nitric acid" as acid which is 30 to 70 percent in strength."  Id.

44.     The owner or operator of a nitric acid production unit subject to Subpart G may not discharge into the atmosphere from the affected facility any gases which contain nitrogen oxides in excess of 1.5  kg per metric ton of acid produced (expressed as 3.0 lb. nitric dioxide, $NO_2$ per ton of acid produced), the production being expressed as 100 percent nitric acid. 40 C.F.R. § 60.72.

45.     The owner or operator of a nitric acid production unit subject to Subpart G must install, calibrate, maintain, and operate a continuous monitoring system for measuring nitrogen oxides emissions.  40 C.F.R. § 60.73.

**III.   TITLE V**

46.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that

all "applicable requirements" that a source is subject to under the CAA, including PSD,

Nonattainment NSR, and NSPS requirements are collected in one permit.

47.     "Major source" is defined as, among other things, any source which directly emits

or has the potential to emit 100 tons or more per year of any regulated air pollutant.  42 U.S.C.

§ 7661(2); 40 C.F.R. § 70.2.   Nitric oxides is a regulated air pollutant.  40 C.F.R. § 70.2.

48.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), U.S. EPA

promulgated regulations implementing the requirements of Title V and establishing the

minimum elements of a Title V permit program to be administered by any state or local air

pollution control agency.  57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at

40 C.F.R. Part 70.

49.     The States of Iowa, Oklahoma and Mississippi each have a U.S. EPA-approved

Title V program.  See 40 C.F.R. Part 70 Appendix A.  They are authorized to issue and enforce

Title V permits.  In all respects relevant to this Complaint, the Title V regulations of Iowa,

Oklahoma and Mississippi that are applicable to this action closely mirror the federal Title V

regulations codified at 40 C.F.R. Part 70.  See Iowa Code § 455B.133(8)(1) and 567 IAC

Chapter 22.100-116; Oklahoma Air Pollution Control Regulation 1.4.3, Mississippi Air and

Water Pollution Control Law, Miss. Code Ann. Section 49-17 et seq. as implemented by MCEQ

Regulation APC-S-6.

50.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), the implementing regulations at

40 C.F.R. § 70.1(b), and the Iowa, Oklahoma and Mississippi Title V permit programs and

regulations, make it unlawful for any person to violate any requirement of a permit issued under

Title V or to operate a major source except in compliance with a permit issued by a permitting

authority under Title V.

51.     Section 504(a) of the CAA, 42 U.S.C. § 7661c(a), the implementing regulations at 40 C.F.R. § 70.6(a), and the Iowa, Oklahoma and Mississippi Title V permit programs and regulations, require that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with "applicable requirements" of the CAA and the requirements of the relevant SIP.  "Applicable requirements" is defined to include any relevant PSD, Nonattainment NSR, and NSPS requirements.  40 C.F.R. § 70.2.

52.     Section 503(d) of the CAA, 42 U.S.C. § 7661b(d), the implementing regulations at 40 C.F.R. § 70.5(a), and the Iowa, Oklahoma and Mississippi Title V permit programs and regulations require any owner or operator of a source subject to Title V permitting requirements to submit a timely and complete permit application.  Among other things, the permit application must contain:  (i) information sufficient to determine all applicable air pollution control requirements (including any requirement to meet the applicable control technology requirements under the PSD and Nonattainment NSR programs and to comply with the applicable New Source Performance Standards), 40 C.F.R. § 70.5(c)(4); (ii) information that may be necessary to determine the applicability of other applicable requirements of the CAA, 40 C.F.R. § 70.5(c)(5); (iii) a compliance plan for all applicable requirements for which the source is not in compliance, 40 C.F.R. § 70.5(c)(8); and (iv) a certification of compliance with all applicable requirements by a responsible official.  40 C.F.R. § 70.5(d)(9).

53.     Under 40 C.F.R. § 70.5(b) and the Iowa, Oklahoma and Mississippi Title V operating permit programs and regulations, any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application must, upon becoming aware

of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information.

## IV.   ENFORCEMENT PROVISIONS

### A.   United States

54.     Sections 113(a)(1) and (3) of the CAA, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator of U.S. EPA may bring a civil action in accordance with Section 113(b) of the CAA whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any other requirement or prohibition of, *inter alia*:  (1) the Prevention of Significant Deterioration requirements of Section 165(a) of the CAA, 42 U.S.C. § 7475(a); (2) the Nonattainment New Source Review requirements of Sections 172 and 173 of the CAA, 42 U.S.C. §§ 7502 - 7503; (3) the New Source Performance Standards in Section 111 of the CAA, 42 U.S.C. § 7411; (4) Title V of the CAA, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (5) a SIP or any permit issued thereunder.

55.   Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator of U.S. EPA to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalties.  Civil penalties of up to $25,000 per day for each violation may be sought for violations prior to January 30, 1997; up to $27,500 per day may be sought for violations on or between January 30, 1997, and March 15, 2004; up to $32,500 per day may be sought for violations occurring on and after March 15, 2004 and January 11, 2009; and $37,500 thereafter.  40 C.F.R. Part 19; 69 Fed. Reg. 7126 (Feb. 13, 2004).

**B.**      **Iowa**

56.      Pursuant to  Iowa Code § 455B.112 the Attorney General for the State of Iowa, is authorized to enforce the requirements set forth in the Iowa SIP and to institute an action for injunctive relief and civil penalties.

57.      The State of Iowa is also authorized to bring this enforcement action under 42 U.S.C. § 7604(a).

**C.**      **Oklahoma**

58.      Pursuant to 27A Okla.Stat. § 2-5-105 the Oklahoma Department of Environmental Quality is authorized to enforce the requirements set forth in the Oklahoma SIP and to institute an action for injunctive relief and civil penalties.

59.      The Oklahoma Department of Environmental Quality is also authorized to bring this enforcement action under 42 U.S.C. § 7604(a).

**D.**      **Mississippi**

60.  Pursuant to the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. Section 49-17 et seq., MCEQ is authorized to enforce the requirements set forth in the Mississippi SIP and to institute an action for injunctive relief and civil penalties.

61.      The MCEQ is also authorized to bring this enforcement action under 42 U.S.C. § 7604(a).

**GENERAL ALLEGATIONS**

62.      At all relevant times, the Defendants' Nitric Acid Plants that are the subject of this Complaint were "nitric acid production units" which  produced "weak nitric acid by either the pressure or atmospheric pressure process."   Each of the Defendants' Nitric Acid Plants emits nitrogen oxides.

Complaint:  United States et. al. v. Terra Industries et. al. – Page 15.

63.     At all times relevant to this civil action, the Defendant's Nitric Acid Plants were each a "major emitting facility" and a "major stationary source" for nitric oxides, within the meaning of the CAA, the PSD and Nonattainment NSR regulations, and the corollary state SIPs. At all times relevant to this civil action, each of the Defendants' Nitric Acid Plants was a "stationary source" within the meaning of the CAA and the NSPS.  At all times relevant to this civil action, all of the Defendants' Nitric Acid Plants were a "major source" within the meaning of Title V of the CAA and the states' Title V permit program.

64.     U.S. EPA has conducted investigations of the Defendants' Nitric Acid Plants at the Port Neal Facility.  These investigations included site inspections, a review of permitting history and emissions data, and an analysis of other relevant information obtained from Terra and Port Neal concerning the construction and operation of the Port Neal Facility.  U.S. EPA also reviewed relevant information concerning other of Defendants' Nitric Acid Plants.  The United States and Iowa, with respect to the Port Neal plants; the United States and the Oklahoma Department of Environmental Quality, with respect to the Woodward and Verdigris facilities, and the United States and Mississippi, with respect to the Yazoo City Facility assert the following claims as to the Defendants' Nitric Acid Plants.

**FIRST CLAIM FOR RELIEF: PORT NEAL FACILITY
AS TO PORT NEAL AND TERRA INDUSTRIES
PSD:  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21; Corollary Iowa SIP Provisions**

65.     Paragraphs 1 - 64 are realleged and incorporated herein by reference.

66.     Port Neal is and was an "owner" and "operator" of the Port Neal Facility within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

67.     Upon information and belief, Terra Industries, along with Port Neal, is and was an "operator" of the Port Neal Facility within the meaning of 42 U.S.C. § 7413(b) at the at the time the violations asserted herein occurred.

68.     On or about September of 1992, Port Neal and Terra Industries (or the predecessors in interest) commenced construction of a major modification on Port Neal # 1, as defined in the CAA and the Iowa SIP, at the Port Neal Facility.  The modification at the Port Neal #1 included one or more physical changes or changes in the method of operation.

69.     This modification resulted in a significant net emissions increase of nitrogen oxides, that is, in an increase of more than 40 tons per year, at the Port Neal Facility.

70.     Port Neal and Terra Industries (or their predecessors in interest) did not apply for, obtain, or operate pursuant to a PSD permit for the 1992 modification as required by Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and the Iowa SIP.

71.     On or about September 1995, Port Neal and Terra Industries commenced construction of major modifications, as defined in the CAA and the Iowa SIP, to Port Neal #1 and constructed a new major secondary source, Port Neal #2, at the Port Neal Facility.

72.     This construction and modification resulted in a significant net emissions increase of nitrogen oxides, that is, in an increase of more than 40 tons per year, at the Port Neal Facility.

73.     Port Neal and Terra Industries did not apply for, obtain, or operate pursuant to a PSD permit for the 1995 construction and modification as required by Section 165(a) of the CAA, 42 U.S.C. § 7475(a) and the Iowa SIP.

74.     By failing to apply for, obtain, and operate pursuant to a PSD permit for the 1992 and 1995 construction and modifications, Port Neal and Terra Industries failed to:  (i) undergo a proper BACT determination in connection with the construction and major modifications; (ii) install and operate BACT for the control of nitrogen oxides; (iii) demonstrate that the emissions increases from the construction and major modifications would not cause or contribute to violations of air quality standards; (iv) provide for review and public comment on the air quality impacts of the construction and major modifications; and (v) otherwise comply with the requirements of the PSD program and the Iowa SIP.

75.     Port Neal's and Terra Industries' construction and modifications to and operation of the Port Neal Facility without a PSD permit and BACT constituted a violation of Section 165(a) of the CAA (42 U.S.C. § 7475(a)), the implementing regulations at 40 C.F.R. § 52.21, and the Iowa SIP (which incorporated the federal program during the entire period of Port Neal's and Terra Industries' ownership and operation of the Port Neal Facility).

76.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Port Neal and Terra Industries to civil penalties of up to $25,000 per day for each violation prior to January 31, 1997, up to $27,500 per day for each violation on or between January 30, 1997, and March 14, 2004, $32,500 per day for each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for each violation occurring thereafter.

77.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Port Neal and Terra Industries to injunctive and equitable

relief to restrain such violations,  require compliance and to obtain offsets of excess emissions

associated with the violations.

**SECOND CLAIM FOR RELIEF: VERDIGRIS FACILITY**
**AS TO TERRA NITROGEN and TERRA INDUSTRIES**
**PSD:  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21; Corollary Oklahoma SIP Provisions**

78.     Paragraphs 1 - 64 are realleged and incorporated herein.

79.     Terra Nitrogen is and was an "owner" and "operator" of the Verdigris Facility

within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

80.     Upon information and belief, Terra Industries, along with Terra Nitrogen, is and

was an "operator" of the Verdigris Facility within the meaning of 42 U.S.C. § 7413(b) at the

time the violations asserted herein occurred..

81.     Upon information and belief, Terra Nitrogen and Terra Industries constructed a

new major secondary source and/or major modifications, as defined in the CAA and the

Oklahoma SIP, at the Verdigris # 1 and Verdigris # 2 at the Verdigris Facility.

82.     Upon information and belief, the construction(s) and/or modification(s) at the

Verdigris Facility resulted in a significant net emissions increase of nitrogen oxides, that is, in an

increase of more than 40 tons per year, at the Verdigris Facility.

83.     Upon information and belief, Terra Nitrogen and Terra Industries did not apply

for, obtain, or operate pursuant to a PSD permit for the construction(s) and/or modification(s) as

required by Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and the Oklahoma SIP.

84.     By failing to apply for, obtain, and operate pursuant to a PSD permit, Terra

Nitrogen and Terra Industries failed to:  (i) undergo a proper BACT determination in connection

with these construction(s) and/or modification(s); (ii) install and operate BACT for the control of

nitrogen oxides; (iii) demonstrate that the emissions increases from these construction(s) and/or

modification(s) would not cause or contribute to violations of air quality standards; (iv) provide

for review and public comment on the air quality impacts of these construction(s) and/or

modification(s); and (v) otherwise comply with the requirements of the PSD program and the

Oklahoma SIP.

85.     Terra Nitrogen's and Terra Industries' construction(s) of and/or modification(s) to

and operation of the Verdigris Facility without a PSD permit and BACT constituted a violation

of Section 165(a) of the CAA (42 U.S.C. § 7475(a)), the implementing regulations at 40 C.F.R.

§ 52.21, and the Oklahoma SIP (which incorporated the federal program during the entire period

of Terra Nitrogen's and Terra Industries' ownership and operation of the Verdigris Facility).

86.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set

forth above subject Terra Nitrogen and Terra Industries to civil penalties of up to $27,500 per

day for each violation on or between January 30, 1997, and March 14, 2004, $32,500 per day for

each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for

each violation occurring thereafter.

87.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Terra Nitrogen and Terra Industries to injunctive  and

equitable relief to restrain such violations, require compliance and to obtain offsets of excess

emissions associated with the violations.

### THIRD CLAIM FOR RELIEF: WOODWARD FACILITY
### AS TO TERRA OKLAHOMA and TERRA INDUSTRIES
### PSD:  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21; Corollary Oklahoma SIP Provisions

88.     Paragraphs 1 - 64 are realleged and incorporated herein.

Complaint:  United States et. al. v. Terra Industries et. al. – Page 20.

89.     Terra Oklahoma is and was an "owner" and "operator" of the Woodward Facility within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

90.     Upon information and belief, Terra Industries, along with Terra Oklahoma, is and was an "operator" of the Woodward Facility within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

91.     Upon information and belief, Terra Oklahoma and Terra Industries constructed a new major stationary source and/or major modification(s), as defined in the CAA and the Oklahoma SIP, to Woodward # 1at the Woodward Facility.

92.     Upon information and belief, these construction(s) and/or modification(s) at the Woodward Facility resulted in a significant net emissions increase of nitrogen oxides, that is, in an increase of more than 40 tons per year, at the Woodward Facility.

93.     Upon information and belief, Terra Oklahoma and Terra Industries did not apply for, obtain, or operate pursuant to a PSD permit for these construction(s) and/or modification(s) as required by Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and the Oklahoma SIP.

94.     By failing to apply for, obtain, and operate pursuant to a PSD permit, Terra Oklahoma and Terra Industries failed to:  (i) undergo a proper BACT determination in connection with these construction(s) and/or modification(s); (ii) install and operate BACT for the control of nitrogen oxides; (iii) demonstrate that the emissions increases from these construction(s) and/or modification(s) would not cause or contribute to violations of air quality standards; (iv) provide for review and public comment on the air quality impacts of these construction(s) and/or modification(s); and (v) otherwise comply with the requirements of the PSD program and the Oklahoma SIP.

95.     Terra Oklahoma's and Terra Industries' construction(s) of and/or modification(s) to and operation of the Woodward Facility without a PSD permit and BACT constituted a violation of Section 165(a) of the CAA (42 U.S.C. § 7475(a)), the implementing regulations at 40 C.F.R. § 52.21, and the Oklahoma SIP (which incorporated the federal program during the entire period of  Terra Oklahoma's and Terra Industries' operation and ownership of the Woodward Facility).

96.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b),, the violations set forth above subject Terra Oklahoma and Terra Industries to civil penalties of up to $27,500 per day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for each violation occurring thereafter.

97.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477, the violations set forth above subject Terra Oklahoma and Terra Industries to injunctive and equitable relief to restrain such violations, require compliance and to obtain offsets of excess emissions associated with the violations..

**FOURTH CLAIM FOR RELIEF: YAZOO CITY FACILITY**
**AS TO TERRA MISSISSIPPI and TERRA INDUSTRIES**
**PSD:  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21; Corollary Mississippi SIP Provisions**

98.     Paragraphs 1 - 64 are realleged and incorporated herein.

99.     Terra Mississippi is and was an "owner" and "operator" of the Yazoo City Facility within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

100.    Upon information and belief, Terra Industries, along with Terra Mississippi, is and was an "operator" of the Yazoo City Facility within the meaning of 42 U.S.C. § 7413(b) at the time the violations asserted herein occurred.

101.    Upon information and belief, Terra Mississippi and Terra Industries constructed a new major stationary source and/or major modification(s), to Yazoo City #6, Yazoo City #8, Yazoo City #9 and Yazoo City #10, as defined in the CAA and the Mississippi SIP, at the Yazoo City Facility.

102.    Upon information and belief, these construction(s) and/or modification(s) at the Yazoo City Facility resulted in a significant net emissions increase of nitrogen oxides, that is, in an increase of more than 40 tons per year, at the Yazoo City Facility.

103.    Upon information and belief, Terra Mississippi and Terra Industries did not apply for, obtain, or operate pursuant to a PSD permit for these construction(s) and/or modification(s) as required by Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and the Mississippi SIP.

104.    By failing to apply for, obtain, and operate pursuant to a PSD permit, Terra Mississippi and Terra Industries failed to:  (i) undergo a proper BACT determination in connection with these construction(s) and/or modification(s); (ii) install and operate BACT for the control of nitrogen oxides; (iii) demonstrate that the emissions increases from these construction(s) and/or modification(s) would not cause or contribute to violations of air quality standards; (iv) provide for review and public comment on the air quality impacts of these construction(s) and/or modification(s); and (v) otherwise comply with the requirements of the PSD program and the Mississippi SIP.

105.    Terra Mississippi's and Terra Industries' construction of, modification(s) to and operation of the Yazoo City Facility without a PSD permit and BACT constituted a violation of

Section 165(a) of the CAA (42 U.S.C. § 7475(a)), the implementing regulations at 40 C.F.R.

§ 52.21, and the Mississippi SIP (which incorporated the federal program during the entire

period of Terra Mississippi's and Terra Industries' operation and ownership of the Yazoo City

Facility).       106.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the

violations set forth above subject Terra Mississippi and Terra Industries to civil penalties of up

to $27,500 per day for each violation on or between January 30, 1997 and March 14, 2004,

$32,500 per day for each violation on or between March 15, 2004 and January 11, 2009; and

$37,500 per day for each violation occurring thereafter.

107.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Terra Mississippi and Terra Industries to injunctive and

equitable relief to restrain such violations, require compliance and to obtain offsets of excess

emissions associated with the violations.

## FIFTH CLAIM FOR RELIEF: PORT NEAL FACILITY
## PORT NEAL and TERRA INDUSTRIES
## NSPS:  42 U.S.C. § 7411; 40 C.F.R. Part 60, Subparts A and G

108.     Paragraphs 1 - 64 are realleged and incorporated herein.

109.     Port Neal is and was an "owner" and "operator" within the meaning of

Sections 111(a)(5) and 113(b) of the CAA, 42 U.S.C. §§ 7411(a)(5), 7413(b) and 40 C.F.R.

§ 60.2, of a "nitric acid production unit" within the meaning of 40 C.F.R. §§ 60.70(a), at the Port

Neal Facility at the time the violations asserted herein occurred.

110.     Terra Industries is and was an " operator," within the meaning of

Sections 111(a)(5) and 113(b) of the CAA, 42 U.S.C. §§ 7411(a)(5), 7413(b) and 40 C.F.R.

§ 60.2, of an "nitric acid production unit" within the meaning of 40 C.F.R. §§ 60.70(a), at the

Port Neal Facility at the time the violations asserted herein occurred.

111.    After publication of the proposed standard of performance for nitric acid production units, on or about September of 1992, Port Neal and Terra Industries commenced construction of a "modification" of an "existing facility" as those terms are defined in the NSPS, 40 C.F.R. §§ 60.2, 60.14, at Port Neal # 1 nitric acid production unit at the Port Neal Facility. The modification included one or more physical changes or changes in the method of operation of the nitric acid production units.  The modification increased the acid production capacity of the Port Neal Facility and the emission rates of nitrogen oxides as defined in the CAA and the Iowa SIP, at the Port Neal Facility.

112.    As a result of the modification, the Port Neal # 1 nitric acid production unit at the Port Neal Facility became an "affected facility" under Subparts A and G of the NSPS, and became subject to the NSPS, including the provisions of Subparts A and G.

113.    Port Neal and Terra Industries failed to install, calibrate, maintain and operate a continuous emission monitoring system for the measurement of nitrogen oxides, in violation of 40 C.F.R. § 60.73, at Port Neal # 1 nitric acid production unit at the Port Neal Facility.

114.    Port Neal and Terra Industries failed to comply with the nitrogen oxides emission limit in the NSPS which was applicable to Port Neal #1 nitric acid production unit at the Port Neal Facility after the modification, in violation of 40 C.F.R. §§ 60.82 and 60.72.

115.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Port Neal and Terra Industries to civil penalties of up to $25,000 per day for each violation prior to January 31, 1997, up to $27,500 per day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for each violation occurring thereafter.

116.    As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477, the violations set forth above subject Port Neal and Terra Industries to injunctive relief to restrain such violations and require compliance.

**SIXTH CLAIM FOR RELIEF: YAZOO CITY FACILITY**
**TERRA MISSISSIPPI and TERRA INDUSTRIES**
**NSPS:  42 U.S.C. § 7411; 40 C.F.R. Part 60, Subparts A and G**

117.    Paragraphs 1 - 64 are realleged and incorporated herein.

118.    Terra Mississippi is and was an "owner" and "operator" within the meaning of Sections 111(a)(5) and 113(b) of the CAA, 42 U.S.C. §§ 7411(a)(5), 7413(b) and 40 C.F.R. § 60.2, of Yazoo City #6, of a "nitric acid production unit" within the meaning of 40 C.F.R. §§ 60.70(a), at the Yazoo City Facility.

119.    Upon information and belief, Terra Industries is and was an "operator," within the meaning of Sections 111(a)(5) and 113(b) of the CAA, 42 U.S.C. §§ 7411(a)(5), 7413(b), and 40 C.F.R. § 60.2, of Yazoo City # 6, of a "nitric acid production unit" within the meaning of 40 C.F.R. §§ 60.70(a), at the Yazoo City Facility.

120.    Upon information and belief, after publication of the proposed standard of performance for nitric acid production units, Terra Mississippi and Terra Industries commenced construction of one or more "modifications" of an "existing facility" as those terms are defined in the NSPS, 40 C.F.R. §§ 60.2, 60.14, at the Yazoo City # 6  nitric acid production unit at the Yazoo City Facility.  Upon information and belief, the modification(s) included one or more physical changes or changes in the method of operation of the Yazoo City # 6 nitric acid production unit and increased the acid production capacity of the Yazoo City Facility and the emission rates of nitrogen oxides as defined in the CAA and the Mississippi SIP, at the Yazoo City Facility.

121.     As a result of the modification(s), the Yazoo City # 6 nitric acid production unit at the Yazoo City Facility became an "affected facility" under Subparts A and G of the NSPS, and became subject to the NSPS, including the provisions of Subparts A and G.

122.     Upon information and belief, Terra Mississippi and Terra Industries failed to install, calibrate, maintain and operate a continuous emission monitoring system for the measurement of nitrogen oxides, in violation of 40 C.F.R. § 60.73, at the Yazoo City # 6 nitric acid production units at the Yazoo City.

123.     Upon Information and belief, Terra Mississippi and Terra Industries failed to comply with the nitrogen oxides emission limit in the NSPS which was applicable to the Yazoo City # 6 nitric acid production unit at the Yazoo City Facility after the modification, in violation of 40 C.F.R. §§ 60.82 and 60.72.

124.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Terra Mississippi and Terra Industries to civil penalties of up to $25,000 per day for each violation prior to January 31, 1997, up to $27,500 per day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for each violation occurring thereafter.

125.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477, the violations set forth above subject Terra Mississippi and Terra Industries to injunctive relief to restrain such violations and require compliance.

**SEVENTH CLAIM FOR RELIEF: PORT NEAL FACILITY**
**PORT NEAL and TERRA INDUSTRIES**
**Title V:  42 U.S.C. § 7661a(a); 7661c(a); 40 C.F.R. §§ 70.5(a), (c); 70.6(a), (c);**
**Corollary Iowa Title V Provisions**

126.     Paragraphs 1 - 64, 66 - 77 are realleged and incorporated herein.

127.     As set forth above, Port Neal and Terra Industries undertook activities constituting a major modification of the Port Neal Facility under the PSD regulations and constituting a modification of an existing facility under NSPS.  As a result, these activities triggered the requirements, *inter alia,* to obtain a PSD permit establishing emissions limitations that meet BACT, to operate in compliance with BACT, and to comply with the NSPS, including Subparts A and G thereof.   Port Neal and Terra Industries, as the owner and operators of the Port Neal Facility, failed to satisfy these requirements.

128.     Port Neal and Terra Industries failed to submit a complete application for a Title V operating permit for the Port Neal Facility that included enforceable BACT emission limits, identified all applicable requirements (including the requirement to meet BACT pursuant to PSD and to comply with NSPS), accurately certified compliance with such requirements, and contained a compliance plan for all applicable requirements for which the Port Neal Facility was not in compliance (including the requirement to meet BACT pursuant to PSD and to comply with NSPS), in violation of Section 503(c) of the CAA, 42 U.S.C. § 7611b(c), 40 C.F.R. §§ 70.5(a) and (c), and the corollary provisions of Iowa's Title V program.

129.     Since the time of its ownership, Port Neal and Terra Industries have operated the Facility and continue to operate the Facility without having a valid Title V operating permit that either requires compliance with BACT and NSPS or contains a compliance plan for coming into compliance with BACT and NSPS, in violation of Sections 502(a) and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661c(a), 40 C.F.R. §§ 70.6(a), (c), and the corollary provisions of Iowa's Title V program.

130.     Unless restrained by this Court, these violations will continue.

131.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set

forth above subject Port Neal and Terra Industries to civil penalties of up to $27,500 per day for

each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for each

violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for each

violation occurring thereafter.

132.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Port Neal and Terra Industries to injunctive relief to

restrain such violations and require compliance.

### EIGHTH CLAIM FOR RELIEF: VERDIGRIS FACILITY
### TERRA NITROGEN and TERRA INDUSTRIES
### Title V:  42 U.S.C. § 7661a(a); 7661c(a); 40 C.F.R. §§ 70.5(a), (c); 70.6(a), (c);
### Corollary Oklahoma Title V Provisions

133.     Paragraphs 1 - 64, 79 - 87 are realleged and incorporated herein.

134.     As set forth above, upon information and belief, Terra Nitrogen and Terra

Industries undertook activities constituting construction of  new major stationary source(s)

and/or a major modification(s) at the Verdigris Facility under the PSD regulations.  As a result,

these activities triggered the requirements, *inter alia,* to obtain a PSD permit establishing

emissions limitations that meet BACT and to operate in compliance with BACT.  Upon

information and belief, Terra Nitrogen and Terra Industries, as the owner and operators of the

Verdigris Facility, failed to satisfy these requirements.

135.     Upon information and belief, Terra Nitrogen and Terra Industries failed to submit

a complete application for a Title V operating permit for the Verdigris Facility that included

enforceable BACT emission limits, identified all applicable requirements (including the

requirement to meet BACT pursuant to PSD), accurately certified compliance with such

requirements, and contained a compliance plan for all applicable requirements for which the

Verdigris Facility was not in compliance (including the requirement to meet BACT pursuant to

PSD), in violation of Section 503(c) of the CAA, 42 U.S.C. § 7611b(c), 40 C.F.R. §§ 70.5(a) and

(c), and the corollary provisions of Oklahoma's Title V program.

136.    Upon information and belief, since the time of its ownership, Terra Nitrogen and

Terra Industries have operated the Verdigris Facility and continue to operate the Facility without

having a valid Title V operating permit that either requires compliance with BACT or contains a

compliance plan for coming into compliance with BACT, in violation of Sections 502(a) and

504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661c(a), 40 C.F.R. §§ 70.6(a), (c), and the corollary

provisions of Oklahoma's Title V program.

137.    Unless restrained by this Court, these violations will continue.

138.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set

forth above subject Terra Nitrogen and Terra Industries to civil penalties of up to $27,500 per

day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for

each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for

each violation occurring thereafter.

139.    As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Terra Nitrogen and Terra Industries to injunctive relief to

restrain such violations and require compliance.

### NINTH CLAIM FOR RELIEF: WOODWARD FACILITY
### TERRA OKLAHOMA and TERRA INDUSTRIES
### Title V:  42 U.S.C. § 7661a(a); 7661c(a); 40 C.F.R. §§ 70.5(a), (c); 70.6(a), (c);
### Corollary Oklahoma Title V Provisions

140.    Paragraphs 1 - 64, 89 - 97 are realleged and incorporated herein.

141.     As set forth above, upon information and belief, Terra Oklahoma and Terra Industries undertook activities constituting a new construction of a major stationary source and/or major modification(s) at the Woodward Facility under the PSD regulations.  As a result, these activities triggered the requirements, *inter alia,* to obtain a PSD permit establishing emissions limitations that meet BACT and to operate in compliance with BACT.  Upon information and belief, Terra Oklahoma and Terra Industries, as the owner and operators of the Woodward Facility, failed to satisfy these requirements.

142.     Upon information and belief, Terra Oklahoma and Terra Industries failed to submit a complete application for a Title V operating permit for the Woodward Facility that included enforceable BACT emission limits, identified all applicable requirements (including the requirement to meet BACT pursuant to PSD), accurately certified compliance with such requirements, and contained a compliance plan for all applicable requirements for which the Woodward Facility was not in compliance (including the requirement to meet BACT pursuant to PSD), in violation of Section 503(c) of the CAA, 42 U.S.C. § 7611b(c), 40 C.F.R. §§ 70.5(a) and (c), and the corollary provisions of Oklahoma's Title V program.

143.     Upon information and belief, since the time of its ownership, Terra Oklahoma and Terra Industries have operated the Woodward Facility and continue to operate the Facility without having a valid Title V operating permit that either requires compliance with BACT or contains a compliance plan for coming into compliance with BACT, in violation of Sections 502(a) and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661c(a), 40 C.F.R. §§ 70.6(a), (c), and the corollary provisions of Oklahoma's Title V program.

144.     Unless restrained by this Court, these violations will continue.

145.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set

forth above subject Terra Oklahoma and Terra Industries to civil penalties of up to $27,500 per

day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for

each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for

each violation occurring thereafter.

146.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Terra Oklahoma and Terra Industries to injunctive relief to

restrain such violations and require compliance.

### TENTH CLAIM FOR RELIEF: YAZOO CITY FACILITY
### TERRA MISSISSIPPI and TERRA INDUSTRIES
### Title V:  42 U.S.C. § 7661a(a); 7661c(a); 40 C.F.R. §§ 70.5(a), (c); 70.6(a), (c); Corollary Mississippi Title V Provisions

147.     Paragraphs 1 - 64, 99 - 107 are realleged and incorporated herein.

148.     As set forth above, upon information and belief, Terra Mississippi and Terra

Industries undertook activities constituting construction of new major stationary source(s) and/or

major modification(s) of the Yazoo City Facility under the PSD regulations and constituting a

modification of an existing facility under NSPS.  As a result, these activities triggered the

requirements, *inter alia,* to obtain a PSD permit establishing emissions limitations that meet

BACT, to operate in compliance with BACT, and to comply with the NSPS, including Subparts

A and G thereof.  Upon information and belief, Terra Mississippi and Terra Industries, as the

owner and operators of the Yazoo City Facility, failed to satisfy these requirements.

149.     Upon information and belief, Terra Mississippi and Terra Industries failed to

submit a complete application for a Title V operating permit for the Yazoo City Facility that

included enforceable BACT emission limits, identified all applicable requirements (including the

requirement to meet BACT pursuant to PSD and to comply with NSPS), accurately certified

compliance with such requirements, and contained a compliance plan for all applicable

requirements for which the Yazoo City Facility was not in compliance (including the

requirement to meet BACT pursuant to PSD and to comply with NSPS), in violation of Section

503(c) of the CAA, 42 U.S.C. § 7611b(c), 40 C.F.R. §§ 70.5(a) and (c), and the corollary

provisions of Mississippi's Title V program.

150.     Upon information and belief, since the time of its ownership, Terra Mississippi

and Terra Industries have operated the Yazoo City Facility and continue to operate the Facility

without having a valid Title V operating permit that either requires compliance with BACT and

NSPS or contains a compliance plan for coming into compliance with BACT and NSPS, in

violation of Sections 502(a) and 504(a) of the CAA, 42 U.S.C. §§ 7661a(a), 7661c(a), 40 C.F.R.

§§ 70.6(a), (c), and the corollary provisions of Mississippi's Title V program.

151.     Unless restrained by this Court, these violations will continue.

152.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set

forth above subject Terra Mississippi and Terra Industries to civil penalties of up to $27,500 per

day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for

each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for

each violation occurring thereafter.

153.     As provided in Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b), 7477,

the violations set forth above subject Terra Mississippi and Terra Industries to injunctive relief to

restrain such violations and require compliance.

**PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States, the State of Iowa, the State of Mississippi, and the Oklahoma Department of Environmental Quality request that this Court:

a.      Permanently enjoin Defendants Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi from operating the Port Neal, Verdigris, Woodward and Yazoo City Facilities, respectively, including the construction of future modifications, except in accordance with the Clean Air Act and the applicable SIPs;

b.      Require Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi to remedy their liability for violations at the Port Neal, Verdigris, Woodward and Yazoo City Facilities respectively by, among other things, requiring Defendants to install and operate the Best Available Control Technology at the facilities for nitrogen oxides ;

c.      Require Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi to apply for permits that are in conformity with the requirements of the PSD and the Title V programs;

d.      Order Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi to comply with the NSPS provisions of the Clean Air Act and the NSPS regulations;

e.      Order Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

f.      Assess a civil penalty against Terra Industries, Port Neal, Terra Nitrogen, Terra Oklahoma and Terra Mississippi of up to $25,000 per day for each violation of the Clean Air Act, its implementing regulations, and the state SIPs prior to January 31, 1997, up to $27,500 per

day for each violation on or between January 30, 1997 and March 14, 2004, $32,500 per day for

each violation on or between March 15, 2004 and January 11, 2009; and $37,500 per day for

each violation occurring thereafter.

g.      Award Plaintiffs their costs of this action; and,

h.      Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

/s/ Ignacia Moreno
IGNACIA MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
Environmental Enforcement Section
Environment and Natural Resources  Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8916 (tel)
(202) 514-4180 (fax)
Elizabeth .Loeb@usdoj.gov

STEPHANIE M. ROSE
United States Attorney
Northern District of Iowa

/s/ Lawrence D. Kudej
LAWRENCE D. KUDEJ
Assistant U.S. Attorney
U.S. Department of Justice
Hach Building Suite 400

401 First St. SE
Cedar Rapids, IA 52401-1825
(319) 363-6333 (tel)
(319) 363-1990 (fax)
Larry.Kudej@usdoj.gov


OF COUNSEL:

Belinda Holmes
Senior Counsel
U.S. EPA Region 7
901 5th Street
Kansas City, KS 66101

Lucia Mendez
Associate Regional Counsel
U.S. Environmental Protection Agency
Region IV
Sam Nunn Atlanta Federal Center,
61 Forsyth Street, SW,
Atlanta, GA 30303-8960
404-562-9900

Justin Lannen
Assistant Regional Counsel
.S. Environmental Protection Agency
Region VI
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202
214-665-8130

Rob Parrish
Attorney Advisor
Air Enforcement Division
U.S. EPA
Ariel Rios Building
Washington, DC

Complaint in the matter of <u>United States et al. v. Terra Industries Inc.</u>

FOR THE STATE OF IOWA

THOMAS J. MILLER
ATTORNEY GENERAL
OF THE STATE OF IOWA


<u>/s/ David R. Sheridan</u>
DAVID R. SHERIDAN
Assistant Attorney General
Environmental Law Division
Iowa Department of Justice
Lucas State Office Building
321 E. 12th Street, Ground Flr.
Des Moines, IA 50319
(515) 281-5351

Complaint in the matter of <u>United States et al. v. Terra Industries Inc.</u>

FOR THE STATE OF MISSISSIPPI

 /s/ Roy Furrh _____
ROY FURRH (Miss. Bar # 4321)
General Counsel
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, MS 39225
Tel:  (601) 961-5260
Fax: (601) 961-5349

Complaint in the matter of <u>United States et al. v. Terra Industries Inc.</u>

FOR THE OKLAHOMA DEPARTMENT OF
ENVIRONMENTAL QUALITY


<u>/s/ J. Trevor Hammons</u>
J. TREVOR HAMMONS, OBA No. 20234
Office of the General Counsel
Oklahoma Department of Environmental Quality
P.O. Box 1677, 707 N. Robinson
Oklahoma City, OK  73101-1677
Phone:  (405) 702-7189
Fax:     (405) 702-7199
Email:  Trevor.Hammons@deq.state.gov